**Jesus REICH–BACOT, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 06–95–00119–CR.

Court of Appeals of Texas,
Texarkana.

Jan. 8, 1996.

Discretionary Review Granted
April 17, 1996.

Robert P. Abbott, Coppell, TX, for appellant.

Sue Korioth, Assistant District Attorney, Dallas, Carolyn Fitz–Gerald Levin, Assistant District Attorney, Dallas, for appellee.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

GRANT, Justice.

Jesus Reich–Bacot appeals from a jury conviction for the murder of Genovevo Manuel Martinez for which he was sentenced to confinement for life and a $10,000 fine.

On appeal, he contends that the trial court erred by refusing to charge the jury on self-defense and by excluding evidence of the victim's habit of arming himself to support the evidence of self-defense.

The victim in this case, Genovevo Manuel Martinez, and the defendant, Jesus Reich–Bacot, were friends. On the afternoon of January 30, 1986, Reich–Bacot was in his backyard with his brother, Rojalio Skull, and a friend, Hector Minaya. Martinez arrived at Reich–Bacot's home after three o'clock that afternoon and went to the backyard where Reich–Bacot, Skull, and Minaya were talking.

Reich–Bacot's former wife,[1] Anna Avila, was at the kitchen sink working and looking through the kitchen window towards the backyard where the men had gathered. Avila testified that Reich–Bacot came inside and told her to stay in the kitchen. As she continued her work in the kitchen, Avila heard a gunshot. She immediately looked in the direction of the gunshot and saw Martinez, who was holding a gun, fall to his knees. Reich–Bacot was five to eight feet away from Martinez and had a .38 caliber revolver in his hand.

Reich–Bacot then went into the kitchen and got a knife. Avila testified that Reich–Bacot, Skull, and Minaya then pulled the body to Reich–Bacot's truck. Reich–Bacot then gave the knife to Skull and Minaya and the two both stabbed Martinez in the stomach. The three then put trash over Martinez's body. Avila further testified that she heard Reich–Bacot tell Skull and Minaya to dispose of Martinez's body in a river or a lake.

Martinez's roommate, Marcos Nelson Suarez, reported Martinez missing that evening. Martinez's body was later found by a fisherman, Gary Bowien, in a rock quarry area. Officer Joe Collard testified he was called to the scene and Bowien showed him the body in the quarry. Officer Collard further testified that it appeared to him that trash had been dumped on top of Martinez's body.

Lieutenant James Cron testified he was called to the scene to investigate. He photographed the scene and collected physical evidence around Martinez's body to test for fingerprints. None of the fingerprints that Cron lifted, however, matched those of Reich–Bacot.

R.W. Veatch, a detective with the Dallas County sheriff's office and the lead detective on the scene, testified that Martinez's truck was found abandoned in a parking lot two miles from Reich–Bacot's house.

Larry Fletcher, a firearms examiner with the Dallas County Southwestern Institute of Forensic Sciences, testified that the comparison between the autopsy bullet retrieved

---

1. Reich–Bacot and Anna Avila were married in 1986 when these events took place. Since that time, however, the two have separated and Avila has filed for divorce.

from Martinez and the defendant's revolver[2] was inconclusive.

Dr. Jeffrey Barnard, the chief medical examiner for Dallas County, testified that the cause of death was a gunshot wound to the forehead and stab wounds to the chest and abdomen.

■ By his first point of error, Reich–Bacot alleges that the trial court erred by refusing to charge the jury on self-defense because the evidence raised this issue. The Texas Court of Criminal Appeals has declared that if the evidence raises the issue of self-defense, the defendant is entitled to a have this issue submitted to the jury. *Riddle v. State,* 888 S.W.2d 1, 6 (Tex.Crim.App. 1994); *Hayes v. State,* 728 S.W.2d 804, 807 (Tex.Crim.App.1987); *Smith v. State,* 676 S.W.2d 584, 586–87 (Tex.Crim.App.1984); *Holmes v. State,* 830 S.W.2d 263, 265 (Tex. App.—Texarkana 1992, no pet.).

■ In determining whether a homicide defendant is entitled to a self-defense charge, the credibility of the evidence or whether it is controverted or conflicts with other evidence should not be considered. *Woodfox v. State,* 742 S.W.2d 408, 409 (Tex.Crim.App. 1987); *Smith,* 676 S.W.2d at 587 (stating that it makes no difference whether the self-defense evidence is "strong, weak, unimpeached, or contradicted"); *Evans v. State,* 876 S.W.2d 459, 464 (Tex.App.—Texarkana 1994, no pet.). The weight of the evidence supporting a self-defense charge is not material to this determination. *Woodfox,* 742 S.W.2d at 409; *Evans,* 876 S.W.2d at 464. The defendant need not testify in order to make this showing. *Woodfox,* 742 S.W.2d at 409; *Evans,* 876 S.W.2d at 464. An instruction on self-defense is not required, however, if the evidence, viewed in the light most favorable to the defendant, does not establish a case of self-defense. *Dyson v. State,* 672 S.W.2d 460, 463 (Tex.Crim.App.1984); *Holmes,* 830 S.W.2d at 265.

With regard to self-defense, the Texas Penal Code states, in relevant part:

[A] person is justified in using force against another when and to the degree he reasonably believes the force is immediately necessary to protect himself against the other's use or attempted use of unlawful force.

TEX.PENAL CODE ANN. § 9.31(a) (Vernon 1994). The Texas Penal Code also declares that a person is justified in using deadly force against another

(1) if he would be justified in using force against the other under Section 9.31;

(2) if a reasonable person in the actor's situation would not have retreated; and

(3) when and to the degree he reasonably believes the deadly force is immediately necessary:

(A) to protect himself against the other's use or attempted use of unlawful deadly force; or

(B) to prevent the other's imminent commission of aggravated kidnapping, murder, sexual assault, aggravated sexual assault, robbery, or aggravated robbery.

TEX.PENAL CODE ANN. § 9.32 (Vernon 1994)[3]; *see also Riddle,* 888 S.W.2d at 6.

In the present case, the only evidence to support a self-defense charge was the testimony of Avila that Martinez was holding a gun as he fell from Reich–Bacot's shot. Reich–Bacot contends that, based on this testimony, the "jury could have concluded that [he] inflicted Martinez's fatal injuries to prevent the latter from killing him." The State contends that this evidence is insufficient because there was no evidence indicating that Martinez pulled his gun before Reich–Bacot shot him. The jury could, however, reasonably infer that Martinez had pulled his gun when he was shot from the fact that Martinez had his gun in his hand seconds after a gunshot to his forehead. This evidence was sufficient to support a self-

**2.** Norman Wyatt, a criminal investigator for the Tarrant County district attorney's office, testified that he found a revolver matching the description of Reich–Bacot's .38 caliber revolver in Reich–Bacot's car during a drug investigation at Reich–Bacot's residence.

**3.** Amended by act of May 29, 1995, 74th Leg., ch. 235, § 1, 1995 Tex.Gen.Laws 2141.

defense charge under the above case law. Therefore, this point of error is sustained.

By his second point of error, Reich–Bacot contends that the trial court erred by excluding evidence of Martinez's habit of arming himself[4] to support Reich–Bacot's self-defense theory. A trial court has wide discretion in determining the admissibility of evidence. *Green v. State,* 880 S.W.2d 198, 202 (Tex.App.—Texarkana 1994, no pet.). The determination of the admissibility of evidence is within the sound discretion of the trial court and will not be reversed on appeal unless a "clear abuse of discretion is shown." *Werner v. State,* 711 S.W.2d 639, 643 (Tex.Crim.App.1986); *Green,* 880 S.W.2d at 202.

Texas law allows a homicide defendant to offer evidence of the victim's prior acts of aggression to support a claim that the victim was the first aggressor. *See, e.g., Thompson v. State,* 659 S.W.2d 649, 653 (Tex. Crim.App.1983); *Gonzales v. State,* 838 S.W.2d 848, 859 (Tex.App.—Houston [1st Dist.] 1992), *pet. dism'd,* 864 S.W.2d 522 (Tex.Crim.App.1993). For example, a homicide defendant may offer evidence of a pertinent character trait of a victim. Tex.R.Crim. Evid. 404(a)(2). Specific acts of misconduct by the victim are also admissible in cases, such as self-defense, where "character or trait of character of a person is an essential element of [the] charge, claim, or defense." Tex.R.Crim.Evid. 405(b); *see also* Tex. R.Crim.Evid. 405(a) (stating that reputation and opinion testimony are proper ways to prove character). Moreover, evidence of a victim's habits or routine practices are admissible under Texas law. Tex.R.Crim.Evid. 406.

The State first argues that Reich–Bacot has not properly preserved this issue because Reich–Bacot did not expressly offer this evidence for its limited purpose as required by Tex.R.Crim.Evid. 105(b). This rule provides that when evidence which is admissible as to one party for one purpose but not admissible as to another party or for another purpose is excluded, such exclusion shall not be a ground for complaint on appeal unless the proponent expressly offers the evidence for its limited purpose. Tex.R.Crim.Evid. 105(b). For example, if a trial court excludes impeachment evidence, the party must expressly offer the evidence for impeachment purposes only to preserve error. In the present case, however, the evidence was not impeachment evidence, but admissible under Tex.R.Crim.Evid. 404(a)(2). This rule, therefore, does not apply in this case.

The State argues that the evidence of Martinez carrying a gun was properly excluded because it was not evidence of his aggressive character as required by Rule 404(a)(2). The Texas Court of Criminal Appeals has declared that, although the mere carrying of a weapon is not per se a violent or aggressive act, it can be a violent act depending on its surrounding circumstances. *See Thompson,* 659 S.W.2d at 654–55; *see also Green v. State,* 682 S.W.2d 271, 299 (Tex.Crim.App.1984), *cert. denied* 470 U.S. 1034, 105 S.Ct. 1407, 84 L.Ed.2d 794 (1985); *Harris v. State,* 722 S.W.2d 436, 438 (Tex. App.—Dallas 1986, no pet.).

The trial court looked at the circumstances surrounding the testimony that Martinez was known to carry a gun and determined that this testimony did not show that Martinez was aggressive. Because the trial court did not abuse its discretion in making this determination, this point of error is overruled.

Based on the first point of error, this cause is reversed and remanded to the trial court for a new trial.

---

4. Marcos Suarez, Martinez's roommate, testified outside of the presence of the jury that Martinez routinely carried a .38 caliber revolver. The court excluded this evidence.